**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Jackie F. Yates

v. Case No. 25-cv-338-LM-AJ

Foremost Farmers Direct Property and Casualty Insurance

## REPORT AND RECOMMENDATION

Self-represented Plaintiff Jackie Yates initiated this action against Defendant Foremost Farmers Direct Property and Casualty Insurance ("Foremost"), arising out of Foremost's denial of Ms. Yates' claim related to water damage at her property.[1] See Doc. No. 1-2 (Complaint). Pending before the court are the parties' cross motions for summary judgment, Doc. No. 39 (Def's Mot.); 54 (Pl.'s Mot.), the corresponding objections, Doc. No. 42 (Pl.'s Obj.); 54 (Pl.'s Supp. Obj.); 61 (Def's Obj.), and replies, Doc. No. 41 (Def's Reply); 63 (Pl.'s Reply). Also pending is Foremost's motion to strike, Doc. No. 59, Ms. Yates's Notice of Filing Technician's Diagnostic Report, Doc. No. 58, to which Ms. Yates objects, Doc. No. 60. The motions are before the undersigned magistrate judge for a Report and Recommendation as to their disposition. For the following reasons, the district judge should grant Foremost's motion for summary judgment, deny Ms. Yates's motion for summary judgment, and deny Foremost's motion to strike as moot.

[1] Despite Ms. Yates's efforts to include other types of claims in this matter, only the denial of insurance claim against Foremost alleged in her original complaint remains in this case. See Doc. No. 34 (R&R explaining status of complaints); Doc. No. 38 (adopting R&R).

## Background

Ms. Yates owns property located at 39 Ripley Lane in Milton, New Hampshire (the "property" or "Ms. Yates's property"). Doc. No. 39-1 ¶ 2. To insure the property, Ms. Yates obtained a policy from Foremost, identified as policy number H7993779860, which was effective from November 5, 2024 to November 5, 2025 (the "policy"). Id. ¶ 1; Ex. B.

On January 24, 2025, the fire department responded to a call from the property. Id. ¶ 3. Water was reportedly flooding the basement from upstairs. Id. ¶ 4. The fire department's investigation revealed the cause to be a broken hot water line connected to the dishwasher. Id. ¶ 5.

On February 3, 2025, Ms. Yates contacted Foremost to report the incident and resulting damage to the property. Id. ¶ 6. On February 5, 2025, field property adjuster Craig R. Flanagan inspected the property. Id. ¶ 7. At the time of the inspection, the heat was not operating. Id. ¶ 8. Three thermostats in the property read 32, 34, and 37 degrees. Id. ¶ 9. The basement living room baseboard heater was turned off and, when turned on, read 39 degrees. Id. ¶ 10. Ms. Yates stated that she ordinarily slept in the basement with a space heater at the time of the flooding. Id. ¶ 11. On February 6, 2025, Ms. Yates reported that the property was heated with a pellet stove, which was broken at the time the basement flooded. Id. ¶¶ 12–13.

On March 14, 2025, Heritage Home Service ("Heritage") inspected the property and determined that the dishwasher suddenly and accidentally flooded due to a manufacturer defect, which caused the water damage to the property. Doc. No. 54 ¶ 3.

Ms. Yates sent Heritage's evaluation to Foremost. Id. The present location of that evaluation and whether any copies were made is unknown.

On April 7, 2025, Foremost's inspector, Dr. Mark Majewski, inspected the property. Doc. No. 39-1 ¶ 14. Dr. Majewski determined that the flooding was caused by the failure of an inlet solenoid value for the dishwasher. Id. ¶ 15. He opined that the failure of the valve was caused by an internal overpressurization event created by the formation of ice within the valve. Id. ¶ 16. The valve was located near an exterior wall, under cabinetry, and exposed to below zero conditions just prior to the flooding. Id. ¶ 18. Ms. Yates disputes that the dishwasher failed due to freezing. Doc. No. 54 ¶ 3. On February 19, 2025, Foremost denied coverage for the water damage resulting from the flooding. Doc. No. 39-1 ¶ 20; Ex. D.

The policy excludes from coverage "freezing or thawing to a plumbing . . . system or of a domestic appliance . . . includ[ing] loss or damage from discharge, leakage or overflow from within the system or appliance caused by freezing." Id., Ex. B. The exclusion does not apply, however, if the insured "used reasonable care to maintain heat in the building or . . . shut off the water supply and drained the plumbing and appliance of water." Id. The policy also excludes "defects" from coverage. Id. The policy generally states, "we [Foremost] pay for direct loss not otherwise excluded or excepted in this policy that follows after the excluded loss. We [Foremost] pay for only the ensuing loss." Id. In other words, if the water damage was caused by freezing, and Ms. Yates failed to reasonably maintain heat in the property, the resulting damage is excluded from coverage, but if the damage was caused by a defect, the policy provides for coverage.

Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence would enable a reasonable factfinder to decide the issue in favor of either party." Alicea v. Cincinnati Inc., 166 F.4th 245, 253 (1st Cir. 2026) (quotation omitted). "A fact is 'material' if it has the capacity to change the outcome of the factfinder's determination." Id. (quotation and brackets omitted). The moving party must "assert the absence of a genuine issue of material fact and then support that assertion by affidavits, admissions, or other materials of evidentiary quality." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003) (citing Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992)). "Mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." August v. Offs. Unltd., Inc., 981 F.2d 576, 580 (1st Cir. 1992).

"Where the movant asserts that there is an absence of evidence to support claims on which the non-movant bears the burden of proof, the non-movant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trial worthy issue persists." Alicea, 166 F.4th at 253 (quotation omitted). "Fulfilling this obligation requires the [non-movant] to do more than the frenzied brandishing of a cardboard sword" but, rather, must identify evidence that is "significantly probative" on the disputed issue. Id. "Cross motions for summary judgment do not alter the summary judgment standard, but instead simply require the court to determine whether either of the parties deserves judgment as a matter of law

on the facts that are not disputed." Wells Real Est. Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010).

Discussion

The parties' dispute centers on the cause of the flooding at Ms. Yates's property and, consequently, whether the ensuing damage is covered under the policy. Foremost's position is that the flooding was caused by Ms. Yates's failure to heat her home which led to freezing in the valve connected to the dishwasher, which fractured, causing the water damage. Ms. Yates contends that a defect in the dishwasher caused the water damage. Under Foremost's factual theory, the damage to Ms. Yates's property would not be covered under the policy because it excludes coverage for loss from discharge, leakage, or overflow from an appliance damaged by ice which formed because the property was not properly heated. Because Ms. Yates failed to heat the home she would not benefit from the limitation of the exclusion applicable when the insured uses reasonable care to maintain heat in the building. On the other hand, under Ms. Yates's theory, the water damage would be covered under the policy because the flooding was an ensuing loss originating from the defect that caused the dishwasher to fail.

Foremost contends that expert testimony is required to establish the cause of the water damage. Consequently, it argues that summary judgment in its favor is appropriate because Ms. Yates failed to produce an expert report in support of her theory. Foremost supplied an expert report in support of its position. In response, Ms. Yates filed a Notice of Technician's Report (which the court understands is intended to contradict Foremost's expert witness' opinion) and contends that Foremost's

suppression and spoliation of the dishwasher and the subject fractured valve precluded her from obtaining an independent evaluation to support her claim.

New Hampshire law applies in determining whether expert testimony is required to support Ms. Yates's claims. Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 27 (1st Cir. 2006) (in a diversity action, "whether expert testimony is required is a matter of state law") (applying New Hampshire law to determine whether expert testimony was required to sustain the plaintiffs' claim for inadequate warnings). "Expert testimony is required . . . to aid the jury 'whenever the matter to be determined is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman.'" Est. of Joshua T. v. State, 150 N.H. 405, 408 (2003) (quoting Powell v. Cath. Med. Ctr., 145 N.H. 7, 14 (2000)). This requirement "serves to preclude the jury from engaging in idle speculation." Id. (citing Lemay v. Burnett, 139 N.H. 633, 634 (1995)). Lay testimony alone suffices "only if the cause and effect are so immediate, direct and natural to common experience as to obviate" the need for expert opinion. Id. (citing Reed v. Cty. of Hillsborough, 148 N.H. 590, 591 (2002)). Where the plaintiff fails to support her claims with expert testimony and such expert testimony is required, summary judgment in the defendant's favor is appropriate. See id. at 409.

Expert testimony is required to determine the cause of the flooding from Ms. Yates's dishwasher and, consequently, the water damage to her property. The requisite causal link—the cause of the dishwasher's failure—depends on "observation and analysis outside the common experience of jurors." Id. Without expert testimony, jurors would be left to speculate as to the cause of the water damage. Compare id. at 408–09 (average juror lacks the experience, training, or education to understand the

complexities of suicide and whether certain circumstances caused the death), and Lemay, 139 N.H. at 636 (average juror's experience with diving board does not equip juror with the ability to assess particular variables that lead to reasonably safe diving conditions); with Powell, 145 N.H. at 14 (average juror equipped with common sense necessary to determine whether frequency of patient's violent behavior rose to level of genuine danger of harm to others). Other jurisdictions have reached similar conclusions. See State Farm Fire and Cas. Co. v. Gopher Baroque Enters., Ltd., No. 09-322, 2010 WL 5464767, at *6 (E.D. Penn. Dec. 29, 2010) ("Absent expert testimony, a reasonable jury cannot find from the evidence adduced that a manufacturing or design defect in the dishwasher at issue here *caused* the fire at issue."); cf. One Beacon Ins. Co. v. Electrolux, 436 F. Supp. 2d 291, 297–98 (D. Mass. 2006) ("Whether the performance of individuals with respect to the repair or maintenance of appliances or machinery reasonably complies with proper standards of care ordinarily requires expert testimony."). Accordingly, Ms. Yates must support her claims with expert testimony to avoid summary judgment in Foremost's favor.

Ms. Yates relies on a technician report,[2] Heritage's evaluation, and her own affidavit. The court first addresses the technician report. In it, the technician stated that he could not determine the cause of the valve's fracture because the water valve was not attached and the water valve hose had been cut. See Doc. No. 58, Ex. A. The technician relayed Ms. Yates's report to him that the valve was removed by the

[2] The technician report was filed separately from Ms. Yates's summary judgment filings. See Notice of Technician Report (Doc. No. 58). In that notice, she does not ask the court to consider the report in its summary judgment determination. See id. The court, however, relies on it here to fully address the parties' arguments. See Fed. R. Civ. P. 56(c)(3).

insurance engineer. Id. It appears that the technician's purpose in inspecting the dishwasher was to determine necessary repairs. See id. (explaining needed repairs and noting Ms. Yates declined the estimate for the cost of repairs). Only a first name is listed to identify the technician and the report does not include any of his qualifications or expert witness experience. See id. Moreover, the report is not sworn. See id.

Ms. Yates's technician report fails to sufficiently support her claims for two reasons: (1) the report is not an expert witness report; and (2) even if the court were to accept the report as expert evidence, it fails to support Ms. Yates's theory that a defect in the dishwasher caused the valve to fracture. The technician report is not an expert witness report but rather a summary of work performed. See Doc. No. 58, Ex. A. An expert report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). While the technician report, Doc. No. 58, Ex. A, notes the compensation the technician received for his diagnostic review of the dishwasher, it does not state his qualifications or cases in which he has testified as an expert. See Adams v. J. Meyers Builders, Inc., 671 F. Supp. 2d 262, 268–69 (D.N.H. 2009) ("Courts have routinely found would-be expert reports wanting under Rule 26(a)(2)(B) for leaving out the required information as to the witness's qualifications, testimony in other cases, or compensation.") (collecting cases). The report also does not detail the technician's

opinion. Rather, the technician explained his inability to diagnose the valve's fracture. See Doc. No. 58, Ex. A. The technician report's failure to include the information necessary to constitute an expert report precludes its consideration as such a report. See Adams, 671 F. Supp. 2d at 269–70 ("[T]he wholesale omission of one or more of the categories of information demanded by the rule . . . almost inevitably leads to preclusion.").

The Heritage evaluation is also insufficient. First, the evaluation has not been produced in the summary judgment record. The only recitation of the evaluation's conclusions is in Ms. Yates's statements. Those statements are inadmissible hearsay and, thus, not subject to consideration on summary judgment. See Integrated Comms. & Tech., Inc. v. Hewlett-Packard Fin. Servs. Co., 478 F. Supp. 3d 126, 131 (D. Mass. 2020) ("Hearsay evidence is inadmissible unless one of the exceptions to the hearsay rule applies, for it is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted.") (cleaned up). Second, even if the evaluation were a part of the record, there is no indication it contains the requisite qualifications to constitute an expert report, see Fed. R. Civ. P. 26(a)(2)(B), and thus fails to support Ms. Yates's claims for the same reasons, explained above, for excluding the technician report from the court's consideration of the instant motions.

Ms. Yates's failure to produce competent expert witness testimony to support her claims is fatal to those claims, and warrants summary judgment in Foremost's favor. See Est. of Joshua T., 150 N.H. at 408–09. Before recommending that the district judge grant summary judgment in Foremost's favor, however, the court addresses Ms. Yates's spoliation argument. As the court understands it, Ms. Yates's spoliation argument is

two-fold: Foremost precluded her ability to obtain an independent evaluation of the subject valve because (1) it withheld the dishwasher from her; and (2) it removed the subject valve from the dishwasher.

Spoliation is the "intentional, negligent, or malicious destruction of relevant evidence." Johnson v. Cashman Dredging & Marine Contracting Co., No. 23-11870-JEK, 2024 WL 5170265, at *1 (D. Mass. Dec. 19, 2024) (citations omitted). Where a party commits spoliation of evidence relevant to a litigated issue, the trier of fact may infer that the evidence was unfavorable to that party. Gomez v. Stop & Shop Supermkt. Co., 670 F.3d 395, 399 (1st Cir. 2012). "This rule is based on the 'commonsense notion' that a party who destroys a piece of evidence or permits it to be destroyed when facing litigation and while knowing its relevancy to the case may have done so because the evidence hurts his position." Karmue v. Moore, 654 F. Supp. 3d 118, 135 (D.R.I. 2023) (citing Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998)). The party asserting spoliation "must show that there is evidence that has been spoiled (i.e., destroyed or not preserved)." Gomez, 670 F.3d at 399.

Explanation of Foremost's expert witness report is necessary to contextualize Ms. Yates's spoliation argument. See Doc. No. 39-4. On April 7, 2025, Dr. Majewski inspected Ms. Yates's property, including the domestic plumbing components. Id. ¶ 12. He observed a failed water inlet valve to the dishwasher. Id. Dr. Majewski conducted a visual and optical microscope examination of the valve body and fracture surfaces. Id. ¶ 18. The fracture propagated through the valve body into the elbow connection. Id. The valve had separated into two pieces. Id. Dr. Majewski removed the valve from the dishwasher and observed no indications of tool marks, gouging, abrasion, deformation,

or any other form of abuse. Id. Based on his observations, Dr. Majewski ruled out the following causes of the valve's fracture: abuse and impact, installation of the brass elbow connection, and chemical or thermal degradation. Id. ¶¶ 18–20, 26. He opined "to a reasonable degree of engineering certainty," that overpressurization caused by freezing of the water within the valve resulted in the fracture. Id. ¶¶ 22, 25–26. Dr. Majewski's research indicated that there were several days of below freezing temperatures prior to the flooding of Ms. Yates's property, including single-digit and negative temperatures three days prior to the loss. Id. ¶ 24. Dr. Majewski's research is bolstered by Mr. Flanagan's observations of the temperature in Ms. Yates's home close in time to the loss. Doc. No. 39-1 ¶¶ 9–10. The below freezing temperatures supported Dr. Majewski's conclusion that freezing caused the valve's fracture considering that it was located near an exterior wall, under cabinetry, during a time of below freezing temperatures. Doc. No. 39-4 ¶ 26.

Ms. Yates has not demonstrated that the dishwasher and its subject valve were spoiled. First, the dishwasher was returned to Ms. Yates on July 22, 2026, see Doc. No. 57 (Notice of Return of Dishwasher), after significant efforts by Foremost to return it sooner, see Doc. No. 41 (detailing Foremost's efforts to return the dishwasher and Ms. Yates's refusal to accept delivery of the dishwasher).[3] Second, Ms. Yates has not demonstrated that Foremost's removal of the valve from the dishwasher constitutes spoliation. Dr. Majewski performed his inspection of the valve after removing it from the dishwasher. See Doc. No. 39-4 ¶ 18. The valve's removal does not preclude another

[3] To the extent there remains a pending request by Ms. Yates for the return of her dishwasher, the district judge should deny it as moot.

qualified expert from inspecting the valve and considering the possible causes of the fracture, observing the location of the plumbing in the kitchen and how it connected to the dishwasher, or researching the weather data at the time of the loss, as Dr. Majewski was able to do after removing the valve. Ms. Yates has not explained why an expert witness of her own could not do the same.

Further, there is no indication that Dr. Majewski's removal of the valve was a deliberate effort to mutilate or destroy relevant evidence. Rather, Dr. Majewski explained that the valve was cut for lab inspection to preserve the connection. See Doc. No. 59-1. Spoliation remedies are designed to "rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence." Sharp v. Hylas Yachts, LLC, 872 F.3d 31, 42 (1st Cir. 2017). Here, spoliation remedies would have no purpose. Accordingly, the district judge should reject Ms. Yates's spoliation arguments.

Finding Ms. Yates's spoliation arguments unavailing, the court recommends granting Foremost's motion for summary judgment on the basis of Ms. Yates's failure to support her claims with expert testimony, denying Ms. Yates's dueling motion for summary judgment, and denying Foremost's motion to strike as moot. Summary judgment is appropriate because Ms. Yates failed to support her claims with required expert testimony. Moreover, without that expert testimony, Ms. Yates failed to contradict the undisputed facts offered by Foremost which support its argument that the water damage to Ms. Yates's property is not covered under the undisputed terms of the policy. See Alicea, 166 F.4th at 253.

Conclusion

For the foregoing reasons, the district judge should grant Foremost's motion for summary judgment, Doc. No. 39, deny Ms. Yates's motion for summary judgment, Doc. No. 54, and deny Foremost's motion to strike, Doc. No. 59, as moot. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in written objections to this Report and Recommendation "are subject to review in the district court," and any issues "not preserved by such objection are precluded on appeal." Id. (citations omitted).

Andrea K. Johnstone
United States Magistrate Judge

September 16, 2026

cc: Jackie F. Yates, pro se
Counsel of Record